Please step up and identify yourselves. Who's going to argue? Good morning. My name is Karen Beverly. I'm with the law firm of Adamski and Conti, and I'm here on behalf of Abraham Untermeyer. Good morning, Justice Smith. My name is Peter Bogger from Schaff and Weiss, and I represent Reed Smith v. Happily. All right. Well, you may or may not know, because I don't recall either of you before, but we're pretty liberal, so if we ask a lot of questions, we'll give you extended time. But don't keep us here all day. Liberal in terms of time. Yeah. Yeah, that's true. It was a timing statement.  Thank you, Your Honor. Thank you. Before I address the merits of our brief, I would like to address a citation that we have on page 12 of our opening brief. It's the case of Sapari v. Villa Olivia. I realized when I was preparing for today's argument that we cited it in error. It does not stand for the proposition that we say that it does, so I would like to withdraw that with my apologies to the Court and to Counsel. And I do submit that the proposition for which we cite it is adequately addressed in other cases, such as McLean v. Russell. Moving on to the merits of the case, the issue here before the Court was whether or not the lower court committed error when it, in essence, required Mr. Untemeyer to prove his case at the pleading stage. The case was dismissed with prejudice, and the only grounds for dismissal were, in essence, that he did not actually prove the allegations of his complaint. In order to survive a motion to dismiss, he needed only to prove the elements of the legal malpractice case, which is duty, which I will get to because I realize that there are two issues regarding duty, depending on which count you're looking to. Breach of that duty and then – Excuse me. Yes. I just want to point out, these microphones do not amplify. Okay. So the people in the back can't hear you. And if you stand closer to it, it will actually catch your voice for the recording that's being made. Okay. Thank you. Thank you. Sorry. And then, in fact, that Mr. Untemeyer was damaged as a result of the attorney's malpractice. In terms of the duty – Excuse me. Mr. Untemeyer was a third-party beneficiary under wills and trusts that were drafted by the attorneys. There is – counsel raises in his brief – Excuse me. An issue regarding the duty. And I think that counsel is turning the duty element on its head when he does that. What the duty is that Mr. Untemeyer needs to show here is that there is an intent to benefit him as the third-party beneficiary. That is what gets him over the duty aspect of this and makes him – gives him the standing to bring the malpractice complaint. How does he get him over the hump? Well, the duty that they're raising is the duty – they want to show that there is an intent not to benefit Mr. Untemeyer, but an intent specifically to utilize certain tax avoidance methods in drafting. And that's not the intent. Yeah, but the law is more specific. The law – He is a beneficiary, but he's not the sole beneficiary. That's correct. If he were the sole beneficiary, I would say your argument makes good sense. But when you have more than one beneficiary, then it becomes the estate is the client, and the client is the total parties. And in this case, the total parties except he signed off. Therefore, you have a tremendous burden to say that this attorney was not representing the estate when, in fact, nobody else complains. Well, I think in order to address that question, we need to break it down by count. The complaint that was dismissed was brought in two counts. The first count was for negligence in the drafting of the will and trust documents. The second was in administration of the estate. I understand what your Honor is saying with regard to the second count because that obviously affects all of the takers under the estate, and there's a higher burden to show duty in that instance because we need to show in cases where there is a potentially adversarial relationship that the intended sole purpose of that relationship was to benefit Mr. Entermeyer as a third party. With regard to that higher burden on the second count, our position is that the trial court erred not only when it dismissed the complaint, but when it never gave us a chance to replead that second count. Plaintiff was given multiple opportunities to replead the complaint on the first count, which was the legal negligence in the drafting of the will and estates. The second count, in terms of the administration of the will after the death of plaintiff's father, we were never given leave to replead that. That was dismissed with prejudice at the outset. So the error there is that the court never, I mean on 615, the issue is to give the plaintiff notice of possible deficiencies in its complaint and then to allow the plaintiff to cure those deficiencies. Repleading an amendment should be liberal to those ends, to the ends of justice. There was nothing, you know, for the court to say this is dismissed with prejudice denied him of the opportunity to address that. Now with regard to the first, I don't think that we need to show, and I don't see any cases in either of the briefs that shows that the sole intent was to benefit Mr. Untermyer and only Mr. Untermyer. There isn't the heightened duty requirement in the case of the drafting of the will and trust documents because it is a non-adversarial proceeding. That's as opposed to the administration of the estate. All that Mr. Untermyer needs to show, and it can be surmised from the language of the will, it can be surmised from the language of other documents. For example, we incorporated into our complaint some correspondence to the attorney. The intent can be surmised from that language. It need not be expressly stated, and I submit to the court that Mr. Untermyer did in fact meet that burden. Going back to the intent issue, the intent that we need to plead, and not prove but plead, is that Mr. Untermyer's father, Frank, had an intent to leave as much of his estate as possible to the beneficiaries by sheltering those assets from excessive taxes. So what more, since you don't in your complaint lay it out, what more specifically could he have done? Well, I submit to the court that it's plaintiff's position that we do in fact lay it out. Where? That's why we're standing here today. I mean, the opposing counsel has addressed pretty thoroughly your trust arguments. And me, as a former probate attorney, you've got a large road to overcome on your trust arguments because you didn't give me any evidence of what his intent was on specific gifts, nor did you give me any specific evidence of anything he would do differently. Well, and that is the... That he says he would do, that he communicated it to anyone. And there's two things I want to address with that question. Number one is what he says, and by he I assume you mean Frank Untermyer, who's the father. Number... Yeah, and unfortunately, because I have a sickly daughter, I don't answer it, but I have to keep it on. But go ahead. Sorry, I didn't mean to interrupt you.  Sorry, I lost my train of thought. As I told you, we're in no hurry. It still wants to talk to me, too. We were talking about your opposing counsel's argument about the trust and how you were showing the intent. Okay. First, and I think I addressed this briefly before, there is no law cited in either brief that stands for the proposition that we need to plead and show at the pleading stage that Mr. Untermyer walked into the attorney's office and said, quote, my intent is to do this. His intent, meaning his intent to shelter his assets for his beneficiaries, can be surmised by his other actions and by the words of the trust and the will itself. And we cite in our complaint, we have allegations about how his intent was to shield his assets, about how he took advantage of certain tools to do that, like the generation-skipping trust. Now, what counsel is asking us to do is, in essence, to actually prove that some kind of alternate plan would work. We needn't do that at the pleading stage. What we need to say is his intent was to shelter assets. They didn't do that, the fact that one-third of the estate had to be paid out in taxes, and therefore Mr. Untermyer was damaged. For us to have to argue and prove at the pleading stage that this trust could have been utilized, it would have resulted in this type of tax savings, goes far beyond what we're required to plead. That, in essence, would require us to get an expert witness. I mean, we would be getting into application of trust laws. We would be getting into application of estate drafting. We would be getting into application of tax laws. And if you look at the various complaints that we did plead throughout, leading up to this one that was finally dismissed with prejudice, in each one we say, okay, here's something that could have been utilized. Here's something that could have been done to shelter more of these assets. And then what defendant would do would come back and say, well, if you look at this tax law, you know, it wouldn't have worked the way they said. Well, that's going far beyond the four corners of the complaint and going far beyond what we need to prove to survive a motion to dismiss under 615. That may be down the road after expert discovery. That may be an issue that could be for summary judgment, assuming they're correct, which we're not prepared to do. What they're asking the court to do and what the trial court did do is to look at laws that are not within the four corners, the tax laws of the complaint, and to apply those. And I know counsel cites some cases standing for the proposition that the trial court is free to take judicial notice of certain laws during, you know, at the pleading stage in a 615 motion. But there's a big difference between the cases cited for that proposition and what happened in our case. There's a difference between, and I'm thinking of the, I think it's the Volstat case, which is the regulatory case where the trial court said, you know, it was fine, we'll take judicial notice of the fact that this type of law does not exist anywhere else in the country. There's a big difference between a court taking judicial notice of, yes, there are tax laws that apply versus here's how they would apply and what you're saying should have been done wouldn't have ever worked to shelter more assets. It just goes beyond what he should be required to prove and what he is required to prove on 615. I want to address, too, the issue raised in counsel's response brief regarding the statute of limitations argument. You know, I can't say that statute of limitations is never appropriate for a 615 motion. However, it was not appropriate in this case. In order for statute of limitations to be appropriate for 615, it needs to be apparent, again, on the four corners of the complaint. There are several things that are not apparent on this complaint that you need to know in order to analyze whether section 214.3d applies. There's nothing in the complaint about whether or not letters of office were issued. There's nothing about the deadline to file claims. There's nothing about a deadline to contest the validity of the will. These are all things that in order for the court to dismiss pursuant to statute of limitations, it would need to get from outside the complaint, and that's absolutely inappropriate. The other issue with the statute of limitations is that it really has never been decided by the trial court and was abandoned pretty early on. The first motion to dismiss was brought pursuant to 615 and 619, was decided on 615, and there has never been a 619 aspect of this motion to dismiss brought since then. And if you take a look at the case, the Furlager case, you need to be real clear about what you're calling your motion and what you can bring under your motion. You can't file a motion to dismiss under 615 and then pull in affirmative matters and say, oh, go ahead and dismiss it pursuant to that, and that case was a collateral estoppel issue. The court said, you know what, that may be true, but listen, this is a 615 motion, and for us to take notice of a ruling in another case is beyond the four corners of the complaint and is inappropriate. So I submit to this court that the statute of limitations argument cannot stand either. And then I just want to address, I think I mentioned it earlier, but the separate duty under count two versus count one, the cases cited by counsel regarding the duty of attorneys in the administration of a will do say that there was no duty in those cases. They do say that in those cases the sole responsibility of the attorney was to the estate versus to the beneficiaries. However, none of the cases cited by either party say that it can never be that an estate attorney would have a duty to a beneficiary's will. It simply says that in cases where the relationship becomes adversarial, there needs to be a clear statement of intent that the benefit was to run to the beneficiary as opposed to the estate. And again, this goes back to the error of the trial court not letting plaintiff replead that one count. It may well be that that could be pled. We were never given the opportunity to do that. And with that, I will save my remaining time. All right. Thank you. Thank you. Some questions? Oh, counsel, as I understand it, the will that we're talking about, you've gone through some iterations, but the will that was actually admitted and appropriate was signed on September 6th of 2002. Is that the correct document? It is attached to our complaint, and I can, let's see, I've got that. Hold on. And the bomb settlement agreement was signed about a year later in September of 2003. I thought it was 04, but I can check those dates. What I'm really interested in is trying to pin down the sequence of events. For example, on page, I'm sorry. In your brief, you mentioned that you attach copies of your complaint and you say that Abraham Untermyer, your client, did not receive any notice of, I guess, of the court date is what you were talking about, and this is on page 1352 of the record. But isn't it true that your client's attorney did receive a letter from the estate's attorneys in January of that year telling your client and his attorneys that there was a court date on March 15th and that the heirs had 42 days to object? I don't have the area of the brief that you're looking at in front of me. I don't know if you have a page number. I can pull that up. But if I recall, the notice that we talk about in the brief is not a notice of a court date. It's a notice of his right to file an objection. Well, there is a document in the file that clearly says from the estate attorneys to your client's attorney at the time who, incidentally, I can't find an appearance in the probate case for. So I don't know whether any attorney ever filed an appearance on the underlying probate case. But there is a letter in the record that says the final report has been filed and we're going to court on March 15th and, oh, by the way, you have 42 days to object, which would have taken you to March 9th of 2007 to object. And my best search of the record can find no such objection ever filed by your client or any motion filed in court to extend the time to file objections. So wasn't this all properly before the probate court to begin with and didn't your client just sort of blow some timelines off? Well, number one, I think that that requires us to consider, again, cases that are outside of to take judicial notice in essence of things that happen in the probate court, which, again, we're getting back to that's our big complaint about what the trial court did here. No, because one of your complaints is that you didn't get notice that and that they, as the representatives of the estate, didn't treat your client fairly. And so I'm trying to figure out how to sort through all of this. And it concerns me that this is all based, the law division case is all based on the underlying probate case. So if there were notices that were given and in your brief you're alleging that they were not given, then those two extremes don't mesh. I want to address your comment that the law division case was all based on the probate case. While that may be the case for the estate administration, there's another aspect of the complaint at issue here, which is the negligent drafting, which is far before the probate case was ever. Well, I have another question about that. On page five of your reply brief, your brief says, quote, the attorneys admit that they did not advise Frank, that would be the dad, to transfer his assets to an irrevocable trust. The answer brief, page 7-8. I have looked at page 7-8. I can't find any such admission. What do you mean by that? And that, Your Honor, may go hand in hand with the case that I withdrew earlier today, and I apologize to the court. I will look while counsel is arguing to see if I can find that. I don't mean to make an excuse, but I didn't draft the briefs. So I'll check. Okay. But we can agree that the decedent in this case was familiar with both irrevocable and revocable trusts, that the Baum Trust was a revocable trust. He chose that. He chose for a reason. We can see the reason is it got changed and changed and changed again, why he wanted control of it. So he was a fairly sophisticated client for his attorneys. So for you to tell this court in your brief, the attorneys admit that they did not advise Frank to transfer his assets to an irrevocable trust, I don't see how you can make that statement. And I'm just asking, where is that supported? Anywhere in the record. And, again, with my apologies, I will look for that reference. My understanding, you aren't the original attorney in this appeal, right? Somebody by the name of Lyles? That's correct, yes. But you're Kathy Beverly? Karen Beverly, yes. Karen, okay. Isn't it also true, though, that the will itself was replete with references to taxes, estate taxes, paying taxes, being subject to taxes? And wouldn't that be a pretty clear indication that the decedent understood that taxes were expected and that he expected them to be paid? Oh, and we don't say that there's a way, and I don't know that there would be a way for him to avoid taxes whatsoever. The complaint is that the taxes that were paid were excessive and unnecessary and that there were ways to pay less of that, to pay one. And you believe that if the motion to dismiss had not been allowed, that you would have been able to prove that in court and that the allegations that you made to that extent in your complaint and amended complaints were sufficient to get you into court to do the facts, to get to the facts? Absolutely. I mean, again, we're getting to the proof issue, where in order to prove that up at trial, we would need to be prepared to put forward an expert witness to talk about the alternatives and what the tax implications would be, but that would require someone knowledgeable in trusts, in wills, in taxes, an accountant to do that math formulation. How would you ever, at that point of the pleading, in a complaint, amended complaint, whatever, how would you ever go about documenting or getting to the point where you could convince the court that you had a good case, a strong case, and you should survive a motion to dismiss if you had to do more than what you have done? What could you have done? I'm confused by the question. There was a motion to dismiss, and it was finally ordered. And I've been wrestling with myself. Okay, so now you're the attorney for one of the beneficiaries, and the most you can do is allege, and the estate is saying, well, it wasn't specific enough. Can you argue that it was specific enough? Well, and that, again, is what brings us here today, is that there's no heightened pleading requirement for a legal malpractice case. This isn't a fraud case where we need to plead with specificity. What we need to show is that the assets were not protected, that they could have been protected, and the fact that they weren't damaged him. And I think, again, that the reason that we're here is in order to meet that heightened pleading requirement, we would need to retain an expert at the pleading stage to pull that in to show, attach an expert report. Here, court, is what should have been done, and here, court, is what the tax savings could have been. I suppose there is an intermediate between that, you know, just setting forth possible options and an estimate of what the tax implications would have been. But that's a proof for trial. That goes to the damages. But when you had five amended complaints, wouldn't you, after two, especially when you know that the judge you were before normally doesn't give more than two, don't you think you'd have to be more specific? I mean, no offense, but any time I appeared before her, I worried if I was going to get out of there alive. I do, too. And, you know, having picked up this case after the fact, I really do, you know, I found it unusual as well that there were so many attempts to replead. And I think that very fact shows that there's something there, that there is a way that it could have been pled. And we submit that the last time we pled it did. It said, you know, here's what we allege was wrong, and here's what they should have done differently. The step that we don't have, which I think is what counsel in the court order dismissing the complaint seems to be insisting that we include, is, and here's what the net result would have been. I think we just need to show, I mean, everything at this stage, at the pleading stage, all of the facts and the inferences need to be decided in favor of Mr. Untermyer unless they can come, I mean, unless it is an absolute legal impossibility on the face of the complaint that these documents could have been drafted better. To better protect these assets, then we have to survive the pleading stage and get on to the proofs and get on to expert discovery to show exactly what the effect would have been. Okay, thank you. Thank you. Good morning again. My name is Peter Brauger, and I represent Reed Smith, the attorneys who are charged with negligence here. Mr. Untermyer was one of five siblings. He's the only one who's maintained an action against either the estate or the attorneys with respect to his father who died now seven years ago, October of 2004. The complaint comes in two counts, and if I may, let me take each one of those individually. The first count in the complaint has to do with supposed negligent drafting of the estate documents. And we've heard this morning again from counsel that supposedly the testator and the decedent, Mr. Untermyer, had an intent to minimize taxes and an intent to elevate that objective, which, of course, many people have as they're planning their estate, elevate that objective of tax minimization or avoidance above all other objectives. So the question to begin with on that count of the complaint is, what in the complaint tells us what this intent was and how it was expressed? And if it's not a direct statement from the decedent, then what documents or conduct permit us, as counsel puts it, to surmise what the testator and decedent's intent might be? So if you look to the complaint, which Judge Flanagan in the trial court did on six different occasions, five amended complaints and the original complaint, on six different occasions, we all looked to the complaint to find a statement of what is the decedent's intent or what conduct, if there isn't a direct express statement, what conduct might allow one to infer that he had an intent to minimize taxation over all other objectives. Now, counsel again this morning said to you very directly, we are not alleging that there was ever a time in which Mr. Untermyer walked into the attorney's office and then she went on to describe this intent. If you look at the complaint, which as I say we did, paragraphs 7 and 13 are the principal paragraphs, and they just state the conclusion that Mr. Untermyer, the decedent's intent was to minimize taxes, or actually the complaint is much more absolute than that, to avoid all taxes. So those allegations the trial court held were not sufficient to do what, notice what fact pleading in Illinois requires, which is to state facts. There's no reference to any meeting, no reference to any letter. So what does the complaint then tell us next? Well, not much, but the complaint then makes two references to conduct which it asked the trial court to deem sufficient to show intent. The first was that there is a provision in the will and in the trust for ways of avoiding a generation skipping tax, and that was taken as evidence that Mr. Untermyer was trying to avoid taxes. But that, of course, does not show that that was his principal objective. It shows that if one of his five children pre-deceased him and then that portion of the estate, that one-fifth share, would go to grandchildren, he was interested in ways of minimizing a tax penalty that would otherwise, or a tax payment that would otherwise be required of him. But that does not show an intent to elevate avoidance of tax over all other objectives. And then the other example given in the complaint, which, again, is the motion to dismiss, so we are looking to the elements in the complaint. The other example given was that Mr. Untermyer, the decedent, had been married, and at the end of apparently a fractious marriage, he exited that marriage, and one of the things that came out of his marriage with Ethel Untermyer was an irrevocable trust. Now, the complaint says in paragraph 16, learning from his bitter divorce from his first wife, Ethel Untermyer, where she received a valuable house and a very favorable, irrevocable trust, Frank Untermyer entered into an antinuptial agreement with his second wife, Marcia Baum, and with that he created a revocable trust. Then in paragraph 22, the complaint tells us, the attorneys failed, that is, Reed Smith, Sacknoff, Weaver attorneys, failed to utilize ways to avoid excessive probate taxes. I think they mean estate taxes. There are no probate taxes. As shown by his establishment of the GST, Generation Skipping Trust, an irrevocable trust of Ethel Untermyer, Untermyer's intent was to utilize legitimate methods of tax avoidance. The irrevocable trust was not drafted by the attorneys, but demonstrates his interest in utilizing. Well, what the complaint tells us is that he was in a bitter divorce in the 1960s from Ethel, and that attorneys other than Sacknoff, Weaver, presumably Ethel's divorce attorneys, drafted an irrevocable trust. Why did they do that? To make sure that the divorce settlement would be enforced and Frank would have to pay. And what conclusion did Frank draw from that? Well, based on what we're reading in the plaintiff's complaint, he went through a bitter divorce. His wife's or former wife's attorneys forced him into an irrevocable trust. He didn't like that, so when he got remarried, he had not only an antinuptial agreement, but a revocable trust, meaning one that he could change. And so to the extent that the complaint tells us anything about Mr. Untermyer's intent, what it tells us is having been burned in a divorce and been forced into an irrevocable trust, when he then had his own lawyers drafting what he drafted was a revocable trust. And Justice Puchinsky, as you point out, he drafted this irrevocable trust in 1986. There were seven amendments thereafter. Right. But I do have a question. Is it reasonable to believe that the way one might deal with an ex-wife and decisions made to a current wife might be different than decisions that are made with regard to one's children, having learned from a bitter divorce? Is it logical to believe that the revocable bomb trust is an indicator that if he had thought about a trusted offer for his children that it also would have been revocable? Aren't children ñ is it fair to believe that one would treat a second wife the same way that one would treat one's children? Well, you and I know that the answer to that would depend on who we're talking about. The answer in the abstract is sure. Sometimes there are distinctions made between children, grandchildren. But this is a man who clearly knew the difference between revocable and irrevocable trusts, and he also clearly knew the difference between ex-wives, current wives and potential ex-wives. Yes. And, Justice Puchinsky, in ñ let's look at the revocable trust, revocable, that he created for Marcia Baum. The exhibits to the complaint include every one of those amended trusts, all eight of them. Yes. Exhibits B, C and E. Yes. So you can actually trace through that. There were amendments. The original one was in 86, then amendments in 96, 97, three amendments in 2000 and two amendments in 2003. And those last two amendments ñ this is part of Exhibit E to the complaint ñ those last two amendments were aimed particularly at his wife, Marcia Baum, whose annual payment was reduced in the first of those amendments from $170,000 down to $70,000, and in the second from $70,000 down to zero. Yes. Which is why she filed her ñ I mean, the economic motivation for her suit in the probate court. Now, the beneficiaries in those ñ when those changes were made, the five children would have received, or did in fact receive, a larger share of the estate. So in terms of, again, how can we determine the true intent? That's the word or the phrase that is used in the leading Supreme Court case on this, the Ogle case that Judge Goldenhirsch wrote many, many years ago in the 80s. How do we determine the true intent? Well, oftentimes a testator or a decedent will actually say what his intent is, or there will be some testimony, or one could have alleged in a complaint. That is not the case here. And the plaintiff never pled it and said again this morning that it never happened. There was never any explicit. So how do we infer it? Well, one of the ways we can do it is look at these trusts. These trusts, although they are styled the Marcia Baum Trust, they are revocable trusts that give the balance of the estate in each one of these trusts to the five children in equal shares. So essentially, there were some charitable contributions to academic institutions. But aside from those, to the extent that Marcia Baum, the wife's share, was reduced, then the five children would get more. The point really on these revocable trusts and the amendments to them, I think, is this. There are comparatively few things in life that are truly irrevocable. A trust at the point in which you are asked to convey essentially all of your assets into a trust and then give up control of that trust towards the objective of avoiding taxation is a drastic step, which most people would be disinclined to do under any circumstances. And here, not only is there no evidence that — evidence is the wrong word. Not only is there no pleading, fact pleading, that that was Mr. Undermire's intent. In fact, his conduct is directly contrary to that. Now, there is a question beyond that. And that is, if you take what the complaint describes as what they think the end point, a successful end point would have been — because remember, this is a negligence suit against the lawyers who are supposed to have come up with some better solution, a better solution that would have reduced taxation and given more money to the beneficiaries. So it is incumbent on someone pleading that the attorneys were negligent to explain how it should have been done better or correctly. The complaints go through — well, for the first three complaints, there was no explained theory at all. This is why the trial court continually said, what's your plan? What's the alternative? How could they have done — they, the attorneys, have done this correctly? Nothing in those initial complaints. Then they suggested the device of what's called an AB trust. And for two complaints, that was the theory, a certain type of estate planning that is frequently used. But ultimately, they abandoned that. And then they came up with this notion of an irrevocable trust, without specifying in the complaint what the terms of that trust were supposed to be. But they do tell us this. Number one, the assets would go into this trust. They don't tell us when. The initial trust here was 1986, 17 years before he died. Again, it is hard to believe, and certainly there is nothing in the complaint that would lead one to infer that 17 years before he died, he would have conveyed essentially all of his assets into a trust in which he no longer had control. And the tax code, unfortunately for plaintiffs, again, has very specific requirements if your intention is to avoid taxation of that estate. Wouldn't you have had to pay a gift tax up front? First of all, you have to pay a gift tax. That's right. I mean, depending, again, on the size. But here it was supposedly $6 million. So there certainly would have been a gift tax. So that's money out at the front. Then, in order to take these assets out of the estate so that they're not taxed at the time of death, in order to do that, then two other requirements have to come into play. Number one, the money can't, in the trust, or the earnings on that money then can't be paid out to the testator who's putting money in because if, to the extent that funds are being paid out, for instance, income during one's life, typical sort of provision, but to the extent of that, then that income or the right to that income under the tax code is included in the estate. So you haven't – it's not that this is good or bad. It's just you haven't accomplished the purpose of no taxation if the income is going to continue to come to the person who put it in. On the other hand, of course, he has no authority over whether that income will come to him. Second point, again, to try to comport with the tax code. This is not expert witness material. This is the text of the Internal Revenue Code, is that if you want to get property out of someone's estate for tax purposes, that person cannot retain the power to appoint or direct where it's supposed to go. Now, here's a man who, again, Justice Kuczynski, you, I gather, actually looked at some of these amendments. Here is a man who, over the course of about two decades, periodically changed where he wanted money to go. Some had to do with children. Others had to do with Roosevelt University became one of the beneficiaries of the trust. Late on, it wasn't something apparently he was thinking about in 1986. This, again, is why many people would be reluctant to create an irrevocable trust and why, especially given what we know about his conduct, not only cannot one cannot affirm, in fact, the complaint is contrary to the premise of plaintiff's entire first count, which is that the premier objective that Mr. Undermire had was to reduce taxes down to zero or a very small amount. And finally, as I think, Justice Smith, you inquired right at the outset, even had there been such an intent on Mr. Undermire's part, he's got to communicate that in some fashion to his lawyers in order for them to be held negligent for not having undertaken that. Well, that raises an interesting question, counsel. State attorneys did not disclose some documents that were requested by Abraham Undermire's attorney taking the position that they were privileged. But without a court order, they would remain privileged. And if it can't get beyond the motion stage, you can never get the court order to find that out, whether or not there was any communication to his attorneys. We don't know if there was a letter to his attorneys. And one other question before you answer that. You've indicated that, and I agree with you, very few people would say, oh, yeah, I'll put all of my money in an irrevocable trust and lose all control over all of my money. But there's nothing anywhere that says that it would have to be all of his money. He could have put half of his money into an irrevocable trust for his children or his grandchildren and still had control over, in this situation, plenty of money to live out his life quite happily. And we don't know whether that was ever his intent either because we've not seen any correspondence between the client and the attorneys. Well, let me take the last point first. Could he have set up other trust arrangements, including for a portion of his assets? Of course he could have. Mm-hmm. Now, whether that was smart or fulfilled his objectives or would have allowed him to live the way he wanted to is something that the complaint does not tell us. And it's the obligation of the court. How could they possibly tell anybody that that was his intent if they have not had access to any documents that are currently privileged and have not been ordered released pursuant to a subpoena or some other court action? There were several letters back and forth that are attached as exhibits to the complaint. I think that's what you're referring to. There were letters from Abraham Untermyer's attorney to the estate attorneys, but we don't have any correspondence from the decedent to his attorneys. And we wouldn't have any way of knowing if the attorneys took any memos or drafted any draft documents or made any alternate proposals to him before he signed the ultimate will and trust documents that we see before us. Well, let me go to the exhibits to the complaint, which is some correspondence asking for gift tax returns. Right. It does not ask for correspondence with the attorneys. It does not ask for what you style as attorney-client privilege. And the reason that the gift tax returns were not delivered is because the obligation of the attorneys at that point was to the estate, one of the beneficiaries. I mean, there were five children. There was Marsha Baum who was filing a lawsuit. There were several universities that were beneficiaries. And so that request was declined years ago. I understand. Years ago, in the probate. I understand that. Now, had that been pursued, had they gone to the probate judge, had this fomented at that time, whether those ultimately would have been produced or not is a matter that the probate court would have discovered. There was no discovery requested in this case. In the probate case was it Abraham? No, I'm talking about the trial, this negligence case. How would anybody ever get past the motion stage on a malpractice case like this without actually getting the documents? Obviously, the attorneys can't release the documents until you're at the discovery stage. And if you can't get past the motion stage, you can't get to the discovery stage. So how could they ever make a case for malpractice or negligence? Well, Your Honor, frequently people, especially as they get older or at times in their life where there are changes in family circumstances through a marriage, a divorce, a death, a new grandchild, will have conversations with a spouse, with family members, with others about what they hope to accomplish, what they're worried about and want to avoid. And frequently will do that not only orally, but sometimes they will write about it. The pleading burden is on the plaintiff who's brought a lawsuit against lawyers who worked very hard for Mr. Untermyer for an extended period of time. Mr. Untermyer retained them originally, I think, to do the trust in the mid-'80s, and Sacknoff and Weaver remained his attorneys for almost two decades at least. They are being charged with having done a job that makes them not only legally responsible for damages, but says that they weren't upholding their obligations to him properly. And it is incumbent on them, if they want to make that sort of a claim, to have some reason to believe it's true. And again, it presents fairly specific evidence in an Illinois pleading, which they entirely failed to do. And worse than entirely failing to do it, counsel admits today there was no explicit communication to the attorneys. Worse than that, they then attach documents that in fact show a contrary. And I think that's a very clear intention. So the pleading standards under 2615, I think, are clear, and they were not met here. And certainly, the plaintiffs had plenty of occasion in which to plead something else if they thought they could, and they didn't. Now, the second count of the complaint. You should make this one a little shorter. Yes, I will. Well, I think it can be shorter, and it was shorter in the trial court, Justice Smith, because once Mr. Unnermeyer died, then the client became the estate. It was no longer Mr. Unnermeyer. It was his estate. And because an estate owes its duty to the estate rather than to beneficiaries and the challenge here is not as to whether someone was in fact a beneficiary or an intended beneficiary. The point is that you can't allege a malpractice case against lawyers unless the lawyer has a duty. And the lawyer's duty, as the case law clearly holds in Illinois, that's why this was dismissed in that instance, with prejudice at a very early, the first or second instance, of a malpractice case. And that's why it's important to dismiss. Illinois law is clear that for understandable reasons, I mean understandable policy reasons, the attorney owes its duty to the estate. The leading case on that, or the most recent of the cases on that, is one that we cited in our brief. That's the Grimes v. Sakely, S-A-I-K-L-E-Y case. Justice Myerscough in the Fourth District, March 2009. To the same effect, in fact, in a little greater detail, is then-Justice Burke in 2006 in the estate of Liss. And there are several other cases. And those cases are not, not only are they not distinguished, they're not even discussed in the plaintiff's brief. So because, with respect to the handling of the estate, there's no standing or there's no ability to show a duty, that count of the complaint was properly dismissed. Now finally, there is an alternative ground for sustaining the trial court, which is statute of limitations. Counsel is sort of half correct about the history of the pleadings below. When we filed our successive motions to dismiss, one of the first things that we ran into with the trial court is that she very archly requires a distinguishing between 2615 and 2619 for good reasons. And she said, first, you're going to proceed with your 2615 and we'll see how that comes out. And then, if appropriate, we'll take up the 2619. In order not to contravene her very direct instruction, but nonetheless maintain our position, in every one of our motions to dismiss, as you'll see in the record, there was an excruciatingly long footnote in which we said, and if the 2615 motion isn't granted, then you should dismiss on statute of limitations ground. The end of our brief here to the appellate court summarizes what is really a pretty straightforward explanation of why this case, even had it been pled satisfactorily would have succumbed to statute of limitations with respect to the testamentary documents, that is, where the negligence took place before death, but the injury is suffered after death, suffered after death because that's when the tax consequences come about. Then the very specific provision on statute of limitations is 13214.3d. 13214.3 is the attorney's malpractice section. And d is the one that tells us if the negligence was before death, but the injury was after death, then you look to that. And that tells us that the claim has to be brought within two years of death, or if there's a probate, as there was here, and that's pled right up on the first page of the complaint, if there's a probate, then it has to be brought within the claims period or the time in which you challenged the will. Well, that all occurred in 2005. The complaint was brought in March 2009, four years later. So that misses the statute by four years. As to the second count, that is subject, I think, to a different statute of limitations, 214.3b, as in boy. And that's the two-year statute. That would have to do with the administration or the handling of the estate. Now, there, Justice Puchinsky, you asked some questions about notice. The first exhibit to the complaint, Exhibit A, is the final report of independent representative with a file stamp copy, January 26, 2007. And, of course, that's also alleged in the complaint, Paragraph 8. So no dispute that notice was given. As of that date at least, the Marsha Baum litigation about whether her share was properly cut back had concluded several years before that, so obviously they knew about that. And the fees that were charged by the attorneys were laid out in the accounting that was part of the final estate. That occurred in January 2007. Two years after that is January 2009. The suit was brought in March 2009. So this was not a subject that we got into at the trial court. We did preserve it. And to the extent that the Court wishes or feels the need to get into an alternative ground for sustaining the trial court, statute of limitations would suffice. Okay, thank you. Thank you. Thank you. I just want to briefly address the homework that I gave myself, which was to look for the citation where we got the citation in our reply brief that says that the auditor advised Mr. Untermyer to utilize an irrevocable trust. And I think it is fair to say that we kind of took liberties in making an inference there. I think that probably where that was gotten was page 11 of their response brief, which talks about why such an instrument would not have made sense in that case. So I think that probably that was coming from, you know, obviously they're saying that that doesn't make sense, so they would not have advised him to use it. But interestingly, when I was looking at that, on that very same page at the top is a sentence which, again, I think goes to the very issue here with the dismissal. It says, this is the second line, moreover, even if plaintiff's allegations were true, that is not the inquiry on 615. You must assume them to be correct. All facts need to be construed in favor of Mr. Untermyer. I think we touched on everything that we have to say kind of in my opening. I just want to leave it with this. You know, if this dismissal with prejudice is affirmed, I think that puts plaintiffs who want to bring legal malpractice cases in a tough spot in terms of what it is that they need to show and what it is that they need to plead in order to drive a 615 motion. I think we're getting into a position where you're going to have to, where you're asking plaintiffs to, in essence, prove certain elements of their case, which isn't necessary at the pleading stage, and I think it would be improper for the dismissal to be affirmed for that reason. Counsel, let me just ask you. You talked about, at some point down the road, bringing in experts to show how in some instances avoided, but aren't you putting the cart before the horse? Isn't counsel put his finger on it at the outset of his argument when he talks about establishing or setting forth facts to show the intent of the deceased? Isn't that what you really have to do, show some facts either by deeds or words indicating that his desire was to minimize the tax consequence on his beneficiaries upon his demise? Well, absolutely, and I think we've done that two ways. Number one, we've said in a verified complaint that that was his intent, and number two, because, and there was a conversation about whether or not we had access to certain memos and correspondence and directives to the attorneys at this stage of the litigation, obviously we don't. Therefore, and the case law supports that, his intent can also be inferred by the fact that in other cases he wanted to reduce the tax implications. You say, we said his intent was, but what facts do you allege that support that conclusion? Because that's a conclusion, we said this was his intent, but what's the factual underpinnings for that? And again, this goes to the trial court's ability to make inferences from his other acts, from his desire based on other documents that were drafted by other and also, too, you know, especially in this case, I think there needs to be, and I don't want to use the word assume, but I think that there was necessarily an intent to reduce taxes unless there's something showing otherwise in that document. Why on earth, unless there was something saying, I intend to give this away, and I know the tax implications are going to be horrendous, but I want to do it anyway. Of course someone who's drafting a will or a trust where they're going to leave assets to their family members want the most money to go to their family members as opposed to the IRS. Of course, necessarily, and there's nothing to contradict that, and I'm not saying that's all that there is, both in the complaint and in the attachments to the complaint. You know, I think you need to look at the big picture and what he did in other instances and pull away from that what his, you know, infer that that was his desire. But, I mean, back it out and look logically, and the trial court's absolutely free to apply their logic. Of course he wanted to avoid excessive taxation and paying away one-third of assets in taxation. And I'm not a tax attorney, but I suspect that that's, there was a better way for that to end. You're done? Yes. Okay, thank you. Thank you. Thank you both. The briefs were very well done. And by the few questions, it kind of indicates we're listening to you very carefully. So you both made very nice arguments. Thank you. Thank you.